United States District Court
Southern District of Texas
**ENTERED**
February 07, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UTEX INDUSTRIES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-1254 |
| | § | |
| GARDNER DENVER, INC. and | § | |
| TROY WIEGAND, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

This is a patent infringement and trade secret misappropriation action filed by Utex Industries, Inc. ("Utex") against Gardner Denver, Inc. ("Gardner Denver") and Tory Wiegand involving United States Patent No. 9,534,691 ("the '691 Patent"). Utex and Gardner Denver disagree about the meaning of terms used in the '691 Patent and therefore ask the court to construe the disputed terms. See Markman v. Westview Instruments, Inc., 116 S. Ct. 1348, 1387 (1996) ("[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court.").

In support of its preferred constructions Utex filed Plaintiff Utex Industries' Opening Claim Construction Brief ("Utex's Opening Brief") (Docket Entry No. 35), in response to which Gardner Denver has filed Defendant Gardner Denver, Inc.'s Response to Plaintiff Utex Industries' Opening Claim Construction Brief ("Gardner

Denver's Response") (Docket Entry No. 36), to which Utex has replied in Plaintiff Utex Industries' Reply in Support of Its Opening Claim Construction Brief ("Utex's Reply") (Docket Entry No. 37). The parties have also filed their Joint Claim Construction and Prehearing Statement (Docket Entry Nos. 31 and 33).

The proper construction of two claim terms remains in dispute: "layer" and "covering." The parties also dispute the effect of the "preamble" to Claim 10. After carefully considering the parties' arguments, the evidence, and the applicable law, the court construes the disputed terms as stated below.

## I. Legal Standard for Claim Construction

In Markman, 116 S. Ct. at 1387, the United States Supreme Court held that the construction of patent claims is a matter of law exclusively for the court. Accordingly, when the parties dispute the meaning of particular claim terms, the court should consider the parties' proposed definitions, but must independently assess the claims, the specification, and if necessary the prosecution history and relevant extrinsic evidence, and declare the meaning of the disputed terms. Exxon Chemical Patents, Inc. v. Lubrizol Corp., 64 F.3d 1553, 1556 (Fed. Cir. 1995), cert. denied, 116 S. Ct. 2554 (1996).

Courts begin claim construction inquiries by ascertaining the "ordinary and customary meaning" of disputed claim terms. Phillips v. AWH Corporation, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005)

(en banc), cert. denied, 126 S. Ct. 1332 (2006) (quoting <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." <u>Id.</u> at 1313. "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." <u>Id.</u>

> In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. . . . In such circumstances, general purpose dictionaries may be helpful. In many cases that give rise to litigation, however, determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art. Because the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." . . . Those sources include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art."

<u>Id.</u> at 1314 (citations omitted).

Two exceptions exist to the general rule that terms carry their ordinary and customary meaning. First, a term may not carry its ordinary and customary meaning "if the patentee acted as his

-3-

own lexicographer and clearly set forth a definition of the disputed claim term in either the specification or prosecution history." CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366 (Fed. Cir. 2002); see also Hormone Research Foundation, Inc. v. Genentech, Inc., 904 F.2d 1558, 1563 (Fed. Cir. 1990), cert. denied, 111 S. Ct. 1434 (1991) ("It is a well-established axiom in patent law that a patentee is free to be his or her own lexicographer . . . and thus may use terms in a manner contrary to or inconsistent with one or more of their ordinary meanings."). Second, a claim term may also be interpreted more narrowly than it otherwise would if "the patentee distinguished that term from prior art on the basis of a particular embodiment, expressly disclaimed subject matter, or described a particular embodiment as important to the invention." CCS Fitness, 288 F.3d at 1366-67.

"[A] patentee need not describe in the specification every conceivable and possible future embodiment of his invention." Id. at 1366 (internal quotation marks and citation omitted). Nor will the court "add a narrowing modifier before an otherwise general term that stands unmodified in a claim." Renishaw PLC v. Marposs Societa' per Azioni, 158 F.3d 1243, 1249 (Fed. Cir. 1998) "If an apparatus claim recites a general structure without limiting that structure to a specific subset of structures, [the court] will generally construe the term to cover all known types of that structure that the patent disclosure supports." CCS Fitness, 288 F.3d at 1366 (internal quotation marks and citation omitted).

There are two types of evidence that courts rely on in conducting claim construction inquiries: (1) intrinsic evidence (e.g., the language of the claim itself, the patent specification, and the prosecution history of the patent) and (2) extrinsic evidence (evidence external to the patent and prosecution history like dictionaries, treatises, and expert and inventor testimony). Phillips, 415 F.3d at 1317 (citing Vitronics, 90 F.3d at 1583). The court is not required to address these sources in any particular order; "what matters is for the court to attach the appropriate weight to be assigned to those sources in light of the statutes and policies that inform patent law." Id. at 1324.

### A. Intrinsic Evidence

The language of the claim itself is "'of primary importance, in the effort to ascertain precisely what it is that is patented." Phillips, 415 F.3d at 1312 (quoting Merrill v. Yeomans, 94 U.S. 568, 570 (1876)). This is "[b]ecause the patentee is required to 'define precisely what his invention is.'" Id. (quoting White v. Dunbar, 7 S. Ct. 72, 75 (1886)). Courts, therefore, carefully consider the context within which a particular term is used in an asserted claim, as well as how the term is used in other claims within the same patent. Id. at 1314. As a general rule, ordinary English words "whose meaning is clear and unquestionable" need no further construction. See Chef America, Inc. v. Lamb-Weston, Inc., 358 F.3d 1371, 1373 (Fed. Cir. 2004).

While the claim language itself should be the court's primary focus, other intrinsic sources can be helpful. For example, the specification "is always highly relevant to the claim construction analysis" and can be either dispositive or "the single best guide to the meaning of a disputed term." Phillips, 415 F.3d at 1315 (quoting Vitronics, 90 F.3d at 1582) (internal quotations omitted); see also CVI/Beta Ventures, Inc. v. Tura LP, 112 F.3d 1146, 1153 (Fed. Cir. 1997) ("[T]he patent drawings are highly relevant in construing the . . . limitations of the claims."). While "[i]t is therefore entirely appropriate for a court, when conducting claim construction, to rely heavily on the [specification] for guidance as to the meaning of the claims," Phillips, 415 F.3d at 1317, it is important that the specification be used only to interpret the meaning of a claim, not to confine patent claims to the embodiments described therein. See Dow Chemical Co. v. United States, 226 F.3d 1334, 1342 (Fed. Cir. 2000) ("[A]s a general rule claims of a patent are not limited to the preferred embodiment . . . or to the examples listed within the patent specification.").

The patent's prosecution history should also be considered when offered for purposes of claim construction. Phillips, 415 F.3d at 1317. The prosecution history "consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent." Id. "[T]he prosecution history can often inform the meaning of the claim language by

demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." Id. However, because "the prosecution history represents an ongoing negotiation between the PTO and the applicant, . . . it often lacks the clarity of the specification and thus is less useful for claim construction purposes." Id.

## B. Extrinsic Evidence

If intrinsic evidence does not resolve the ambiguity in a particular claim term, the court may look to extrinsic evidence to help it reach a conclusion as to the term's meaning. See Phillips, 415 F.3d at 1317; Vitronics, 90 F.3d at 1583. The court may look to dictionaries "if the court deems it helpful in determining 'the true meaning of language used in the patent claims.'" Phillips, 415 F.3d at 1318 (quoting Markman, 52 F.3d at 980). However, the court must be mindful that extrinsic evidence may only supplement or clarify -- not displace or contradict -- the intrinsic evidence. See id. at 1319 ("[E]xtrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence."). "[H]eavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification." Id. at 1321.

## II. Construction of Disputed Terms

The parties dispute the construction of the terms "layer" and "covering" as used in Claim 10 of the '691 Patent, which states in relevant part:

> A header ring for use in a reciprocating plunger-type pump, the pump adapted to displace a fluid . . . wherein the header ring has a resilient body comprising . . . a <u>layer</u> of a fabric reinforced elastomeric material <u>covering</u> at least the forward facing portion of the radially inwardly extending first annular portion and the axially extending second annular portion.[1]

Neither party argues that either "layer" or "covering" has a particular meaning in the relevant field of art. The court is therefore to apply the ordinary meanings of these commonly understood words. Utex argues that "layer" and "covering" are terms that should be given their plain and ordinary meaning and require no further construction. Gardner Denver argues that further construction of these terms is required to assist the jury in evaluating the scope of the technology claimed in the '691 Patent. The parties also dispute whether the "preamble" of Claim 10 merely shows the intended use of the patented technology or whether the preamble imposes positive limitations on the technology.

---

[1] <u>See</u> '691 Patent, Exhibit A to Utex's Opening Brief, Docket Entry No. 35-1, p. 10 Col. 7 ln. 1 -- Col. 8 ln. 13 (emphasis added).

A. Construction of "Layer"

| Disputed Term | Utex's Construction | Gardner Denver's Construction |
|---|---|---|
| "layer" | Plain and ordinary meaning | A discrete thickness or stratum |

"Layer" is an ordinary English word with a clear and unquestionable meaning. Neither Utex nor Gardner Denver argues that "layer" has a special meaning different from its plain and ordinary meaning to persons of ordinary skill in the art. The parties simply dispute what the plain and ordinary meaning of "layer" is: Gardner Denver argues that its construction encapsulates the plain and ordinary meaning of layer, while Utex argues that layer requires no further construction.

The invention claimed in Claim 10 is a header ring with "a resilient body **comprising** . . . a layer of a fabric reinforced elastomeric material . . . ."[2] The court is persuaded by Utex's argument that nothing in the language of Claim 10 or the '691 Patent as a whole requires that the layer referenced in Claim 10 be "discrete" from the header ring's resilient body. The language and construction of Claim 10 suggests that the layer of fabric reinforced elastomeric material is part of the header ring's resilient body.[3] The Summary of the '691 Patent also refers to the

---

[2] See id. at 10, Col. 7 ln. 20 -- Col. 8 ln. 10 (emphasis added).

[3] See id. at 10, Col. 7 ln. 20 -- Col. 8 ln. 13 (listing the "layer of fabric reinforced elastomeric material" as one of the components of the resilient body).

"layer" contained in Claim 10 as a portion of the body containing elastomeric material.[4] The figures depicting the Patent's preferred embodiments show the "layer of fabric reinforced elastomeric material" as being contained within the resilient body.[5]

Gardner Denver's argument that the specification supports its construction is not persuasive because Gardner Denver relies too heavily on the preferred embodiments depicted in the specification. The potential scope of the '691 Patent is not limited by the preferred embodiments it depicts -- the preferred embodiments merely show potential applications of the patented invention. Gardner Denver's argument that the "layer of fabric reinforced elastomeric material" is discernable or "discrete" in each of the preferred embodiments is therefore not persuasive. Utex's commercial embodiments of the '691 Patent are not relevant to the court's interpretation of the terms in Claim 10. Claim 10 of the '610 Patent does not require the "layer of fabric reinforced elastomeric material" to be "discrete" from anything, including the rest of the resilient body.

---

[4] See id. at 7, Col. 2 ln. 37-53.

[5] See id. at 5-6. The diagonal lines on Figure 9 in the '691 Patent depict the resilient body and the dashed or dotted lines depict the "layer of fabric reinforced elastomeric material." The diagonal lines overlap (or are on top of) the dotted lines. This tends to show that the "layer" was not thought by the patentee to be discrete from the resilient body.

-10-

The remaining parts of Gardner Denver's proposed construction borrow words directly from a dictionary definition of "layer."[6] At the Markman hearing Gardner Denver agreed that "stratum" is a synonym for layer.[7] "Thickness" is also a synonym for layer.[8] Circular constructions such as this will not assist the trier of fact in evaluating Utex's infringement claims. Gardner Denver fails to show how "thickness" adds more clarity to Claim 10 than the term layer standing alone. Counsel for Gardner Denver acknowledged that jurors are familiar with what a layer is: "[M]ember[s] of the jury [ ] know, as the American Heritage Dictionary says, what a layer of dust is on the window sill, what a cake is with four layers."[9] Because Gardner Denver's proposed construction asks the court to adopt synonyms for a plain and unambiguous term, it will not assist the trier of fact any more

---

[6] See Merriam-Webster's Ninth New Collegiate Dictionary: "layer," Exhibit K to Utex's Opening Brief, Docket Entry No. 35-11, p. 5 (defining "layer" as "one thickness, course, or fold" and listing "stratum" as a synonym for "layer"); see also Transcript from Markman Hearing ("Markman Transcript"), Docket Entry No. 42, p. 96, ln. 4-9 ("[The word stratum] shows that the concept of layer really does have discrete built into it. The American Heritage Dictionary uses a single thickness. The Merriam-Webster Dictionary uses one thickness. One and a single are both concepts of discretion.").

[7] See Markman Transcript, Docket Entry No. 42, p. 95, ln. 23-24 -- p. 96, ln. 1-3 ("I understand that stratum is probably a term that will not assist the jury . . . And it is right in the dictionary, and it is a synonym of layers showing the way the word layer is used.").

[8] See "layer," https://www.thesaurus.com/browse/layer (listing "thickness" as a synonym for layer).

[9] See id. at 95, ln. 8-11.

than if "layer" were left undefined. The court will not further define the term "layer."

B. Construction of "Covering"

| Disputed Term | Utex's Construction | Gardner Denver's Construction |
|---|---|---|
| "covering" | Plain and ordinary meaning | Laid over or atop |

"Covering" is also an ordinary English word without a particular meaning to persons having ordinary skill in the art. Both parties argue that their construction encapsulates the plain and ordinary meaning of the term: Utex argues that "covering" is a commonly understood term that does not require further definition, while Gardner Denver argues that "laid over or atop" embodies the plain meaning of "covering."

Utex argues that Gardner Denver's proposed construction improperly imports a process limitation into Claim 10, which is an apparatus claim describing only the final structure of the invention and not the process by which it is manufactured. Utex contends that there are many ways a layer can be made to "cover" a particular surface without being "laid over" it. For example, at the Markman hearing Utex pointed out that a layer could be grown on the surface or integrally formed as part of the surface.[10] Gardner Denver, on the other hand, argues that if one thing is "covering"

---

[10] See id. p. 78, ln. 19-20 -- p. 79, ln. 2-9.

another, one thing must necessarily be "laid over or atop" another.[11]

Gardner Denver's proposed construction comes from a dictionary definition of the verb "cover,"[12] which adds no more clarity to Claim 10 than the word "covering" without further construction. If, as Gardner Denver argues, covering something necessarily involves one thing being "laid over or atop" another, then no further construction of "covering" is required to assist the trier of fact. The unhelpfulness of further construction coupled with potentially improper process limitations imposed by Gardner Denver's construction persuade the court that no further construction of "covering" is required.

## C. Construction of the Preamble

Before Claim 10 describes the actual components of the header ring patented by the '691 Patent, it provides an introductory "preamble" describing the mechanical assembly in which the header ring was intended to operate:

> A header ring for use in a reciprocating plunger-type pump, the pump adapted to displace a fluid, comprising:

---

[11] See id. at 100, ln. 12-14 ("[T]he concept of covering as used in every dictionary definition and in the way people use covering is it is something on top of something else.").

[12] See American Heritage Dictionary: "cover," Exhibit 1 to Gardner Denver's Response, Docket Entry No. 36-1, p. 2 (defining "cover" as "[t]o place something upon or over" or "[t]o lie over or adhere to . . ."); Merriam Webster's Ninth New Collegiate Dictionary: "cover," Exhibit K to Utex's Opening Brief, Docket Entry No. 35-11, p. 4 (defining "cover" as "to lie over" or "to lay or spread something over").

>           a stuffing box housing having a generally
>           cylindrical bore extending therethrough and forming
>           a generally radially inwardly facing housing
>           cylindrical surface;
>
>           a plunger reciprocally extending through the
>           stuffing box housing; and
>
>           a sealing apparatus disposed within the stuffing
>           box, the sealing apparatus having a high pressure
>           end and comprising (i) an annular sealing ring
>           circumscribing and slidingly engaged by the plunger
>           and (ii) a header ring . . . .[13]

Utex argues that this language is not a positive limitation on the scope of Claim 10, but instead describes the environment in which the patented technology was intended to be used. Gardner Denver argues that this language is not a preamble and that the elements of the pump constitute physical elements of Claim 10.

Gardner Denver argues that this language is not a true preamble because of where it appears.[14] But statements of intended use can appear anywhere in the claim and are not limited to a defined preamble section. In re Stencel, 828 F.2d 751, 754 (Fed. Cir. 1987). Whether a statement of intended purpose constitutes a limitation on the claims is to be determined by the facts of each individual case in view of the claimed invention as a whole. Id. The patentee's choice to include in Claim 10 a description of the environment in which the patented header ring was to operate (i.e.,

---

[13] See '691 Patent, Exhibit A to Utex's Opening Brief, Docket Entry No. 35-1, p. 10.

[14] See Markman Transcript, Docket Entry No. 42, pp. 105-06 (arguing that the disputed terms limit Claim 10 because the patentee chose not to put the background terms in the actual preamble section).

the pump where the header ring is used) does not mean that pump or any of the parts of the pump described are claimed as part of the invention. See <u>Williams Manufacturing Co. v. United Shoe Machinery Corp.</u>, 62 S. Ct. 1179 (1942) (stating that a patentee can reference "other mechanical parts" in describing the environment in which an invention is meant to "operate" without necessarily making those other parts elements of the claim). The court concludes that the language at the beginning of Claim 10 merely shows the environment in which the patentee intended the header ring to operate. When viewed in its entirety the '691 Patent only claims the header ring. Therefore, the introductory or preamble language at the beginning of Claim 10 does not limit the scope of Claim 10.

### III. Order

For the reasons stated above, the court adopts the following constructions for the disputed terms of Claim 10 of the '691 Patent:

| Disputed Term | Construction |
|---|---|
| "layer" | plain and ordinary meaning |
| "covering" | plain and ordinary meaning |

**SIGNED** at Houston, Texas, on this 7th day of February, 2019.

SIM LAKE
UNITED STATES DISTRICT JUDGE