United States District Court
Southern District of Texas

**ENTERED**

February 21, 2020

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| UTEX INDUSTRIES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-1254 |
| | § | |
| TROY WIEGAND and GARDNER DENVER, | § | |
| INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This is a patent infringement action filed by Utex Industries, Inc. ("Utex") against Dr. Troy Wiegand ("Wiegand") and Gardner Denver, Inc. ("Gardner") (collectively, "Defendants"), involving United States Patent No. 9,534,691 ("the '691 Patent"). Utex also alleges claims for theft of trade secrets, breach of contract, unfair competition, and tortious interference with a contract. Pending before the court are Defendants Gardner Denver Inc.'s and Dr. Troy Wiegand's Motion for Summary Judgment on Multiple Grounds (Docket Entry No. 139) ("Defendants' MSJ") and Utex's Motion for Summary Judgment that the '691 Patent Is Not Anticipated ("Utex's MSJ") (Docket Entry No. 133). For the reasons stated below, Defendants' MSJ will be granted in part and denied in part, and Utex's MSJ will be granted.

## I.  <u>Factual and Procedural Background</u>

Utex is a Texas corporation that manufactures oil-and-gas pump-related equipment such as gaskets and pump packing assemblies.[1]  One component that Utex manufactures is a semi-flexible but durable header ring placed at the high-pressure end of reciprocating plunger-type pump packing assemblies.[2]  Utex sells packing assemblies that include its XLH® X-tended Life Header Ring ("XLH header ring"), which it alleges is protected by its '691 Patent.[3]  The patent describes a header ring that includes an outer layer of fabric reinforced elastomeric material to increase the ring's durability.[4]  Utex developed a profitable customer base for its high-performance XLH Packing Assembly using its header ring.[5]

Gardner is a competitor that has recently developed pump packing assemblies similar to and rivaling Utex's.[6]  Utex alleges

---

[1]Plaintiff's Third Amended Complaint ("Third Amended Complaint"), Docket Entry No. 74, p. 1 ¶¶ 1-2.  All page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

[2]<u>Id.</u> at 2 ¶ 3.

[3]<u>Id.</u> at 2 ¶ 5.

[4]'691 Patent, Exhibit 7 to Defendants' MSJ, Docket Entry No. 139-7, at 7; Inventor Declaration, Exhibit 21 to Plaintiff Utex's Response in Opposition to Defendants Gardner Denver Inc.'s and Dr. Troy Wiegand's Motion for Summary Judgment on Multiple Grounds ("Utex's Response"), Docket Entry No. 148-32, pp. 3-4 ¶¶ 13-14.

[5]Damages Expert Report of Alan Ratliff on Behalf of Utex Industries, Inc. ("Ratliff Report"), Exhibit A-1 to Utex's Response, Docket Entry No. 148-3, pp. 23-28.

[6]Third Amended Complaint, Docket Entry No. 74, p. 4 ¶ 11.

that its former employee, Wiegand, stole its confidential information before departing to work for Gardner, enabling Gardner to create a product that "appears identical" to Utex's.[7]  Utex alleges that Wiegand's personal device contained a large amount of Utex's data when he left to join Gardner, some of which he may have deliberately acquired just prior to his departure.[8]  Additionally, Gardner's packing assembly includes its Redline header ring constructed entirely of fabric-reinforced elastomeric material, similar but not identical to Utex's XLH header ring.[9]

On April 20, 2018, Utex filed this action against Gardner and Wiegand.[10]   Utex alleges that Gardner's Redline header ring infringes upon the '691 Patent.[11]  Utex also alleges that Gardner and Wiegand were only able to develop the Redline packing ring through theft of trade secrets, breach of and tortious interference with Wiegand's non-disclosure agreement with Utex, and unfair business practices.[12]  On November 20, 2019, Utex filed its motion

---

[7]Id. at 3-4 ¶¶ 8-11.

[8]See Expert Report of Larry D. Jones ("Jones Report"), Exhibit C-1 to Utex's Response, Docket Entry No. 148-8, pp. 5, 13-14, 19-29.

[9]Initial Expert Report of Steven MacLean, Ph.D., P.E. Regarding Infringement of U.S. Patent No. 9,534,691 ("MacLean Patent Report"), Exhibit 6 to Defendants' MSJ, Docket Entry No. 139-6, pp. 3 ¶ 3, 4 ¶ 89.

[10]Plaintiff's Original Complaint, Docket Entry No. 1.

[11]Third Amended Complaint, Docket Entry No. 74, p. 5.

[12]Id. at 10-18.

for summary judgment that the '691 Patent is not anticipated as a matter of law.[13]  Defendants responded on December 11, 2019,[14] and Utex replied on December 23, 2019.[15]  On December 10, 2019, Defendants filed their motion for summary judgment on multiple grounds.[16]  Utex responded on December 31, 2019,[17] and Defendants replied on January 10, 2020.[18]

Also pending before the court are multiple <u>Daubert</u> motions to exclude expert opinions.[19]  The court has considered the objections to the expert opinions and concludes that they do not affect the

---

[13]Utex's MSJ, Docket Entry No. 133; Plaintiff Utex's Memorandum in Support of Its Motion for Summary Judgment that the '691 Patent Is Not Anticipated ("Utex's MSJ Brief"), Docket Entry No. 134.

[14]Defendants' Memorandum of Law in Opposition to Utex's Motion for Summary Judgment that the '691 Patent Is Not Anticipated ("Defendants' Response"), Docket Entry No. 142.

[15]Utex's Reply in Support of Its Motion for Summary Judgment of No Anticipation ("Utex's Reply"), Docket Entry No. 146.

[16]Defendants' MSJ, Docket Entry No. 139.

[17]Plaintiff Utex's Response in Opposition to Defendants Gardner Inc.'s and Dr. Troy Wiegand's Motion for Summary Judgment ●n Multiple Grounds ("Utex's Response"), Docket Entry No. 148.

[18]Defendants' Reply Memorandum of Law in Support of Motion for Summary Judgment on Multiple Grounds ("Defendants' Reply"), Docket Entry No. 149.

[19]Utex's Motion to Exclude Benton Baugh's Expert Testimony Regarding Patent Value, Docket Entry No. 116;  Utex's Motion to Exclude Certain Opinions of Defendants' Damages Expert Vincent A. Thomas, Docket Entry No. 119; Defendants' Motion to Exclude Damages Opinions of Alan Ratliff and Head Start Opinions of Steven MacLean as to Rubber Formulations, Docket Entry No. 123; Utex's Motion to Exclude Certain Technical Opinions of Rigoberto Advincula, Docket Entry No. 131.

court's analysis of the pending motions for summary judgment; and, as stated below, the court will consider the objections at trial.

## II.  Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56(a).  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986).  The Supreme Court has interpreted the plain language of Rule 56(a) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 106 S. Ct. at 2553).  If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that facts exist over which there is a genuine issue for trial.

Id.; see Bellard v. Gautreaux, 675 F.3d 454, 460 (5th Cir. 2012) ("[T]he evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial."). "[T]he nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" Little, 37 F.3d at 1075-76 (quoting Armstrong v. City of Dallas, 997 F.2d 62, 67 (5th Cir. 1993)).

## III. Patent Infringement

### A. The '691 Patent

Utex alleges that Gardner's Redline header ring infringes claim 10 of the '691 Patent.[20] The contested portion of claim 10 is the limitation that the claimed header ring have "a layer of a fabric reinforced elastomeric material covering at least the forward facing portion of the radially inwardly extending first annular portion and the axially extending second annular portion."[21] The parties agree that this means a layer of fabric reinforced elastomeric material covers at minimum an "L-shaped portion" of the ring.[22] The parties agree that "fabric reinforced elastomeric

---

[20]Third Amended Complaint, Docket Entry No 74, p. 8 ¶ 35.

[21]'691 Patent, Exhibit 7 to Defendants' MSJ, Docket Entry No. 139-7, p. 10.

[22]Utex's MSJ Brief, Docket Entry No. 134, p. 10; Defendants' MSJ, Docket Entry No. 139, p. 15.

material" means an elastomeric material containing fabric for added strength and that "fabric" means "any cloth or cloth-like structure made by any technique such as knitting, weaving or felting of fibers of [any kind] or any combination thereof."[23] On February 7, 2019, the court issued a <u>Markman</u> order construing the terms "layer" and "covering" in claim 10 according to their plain and ordinary meaning.[24]

## B. Anticipation

Defendants and Utex seek summary judgment that claim 10 of the '691 Patent is and is not, respectively, anticipated by prior art as a matter of law. The parties agree that there are no genuine issues of material fact as to anticipation and argue only what legal conclusion is required by the undisputed facts.[25] The issue is whether prior art header rings constructed uniformly of fabric-reinforced elastomeric material in the L-shaped portion anticipate claim 10's limitation of "a layer of fabric of reinforced elastomeric material covering" that portion.

---

[23]Revised Exhibit A, Agreed and Disputed Terms, attached to Joint Motion to Submit Revised Exhibit A to Joint Claim Construction and Prehearing Statement, Docket Entry No. 34-1, p. 1.

[24]Memorandum Opinion and Order ("<u>Markman</u> Order"), Docket Entry No. 44, p. 15.

[25]Utex's MSJ Brief, Docket Entry No. 134, p. 6; Defendants' Response, Docket Entry No. 142, p. 10.

1.  The Prior Art Header Rings

The prior art header ring in Figure 3 of the '691 Patent ("Figure 3") is composed of two sections, one "of homogeneous elastomeric material construction" and the other of "a fabric or fiber reinforced material."[26]   The ring in Figure 3 has the same dimensions as the ring described in claim 10, including an L-shaped portion that is in the "fabric or fiber reinforced material" section.[27]   One of Utex's experts stated that he understood "that the 'fiber or fabric' reinforcement referenced by [Figure 3] encompasses short fibers, strands of flocked cotton, or chopped up fabric dispersed randomly in an elastomeric material."[28]

Figure 1 of the '691 Patent ("Figure 1") depicts a prior art header ring "made of a homogeneous elastomeric material" of the same dimensions as that in claim 10.[29]   In the background section, the '691 Patent states that header rings are "typically made of an elastomeric material . . . [either] homogeneous elastomeric material or an elastomeric material containing layers of cloth or

---

[26]'691 Patent, Exhibit 7 to Defendants' MSJ, Docket Entry No. 139-7, pp. 4, 7.

[27]Utex does not dispute that the dimensions of the Figure 3 ring match those described in claim 10.

[28]Initial Expert Report of Vinod Sharma, P.E., CFSE Regarding Validity of U.S. Patent No. 9,534,691 ("Sharma Report"), Exhibit 12 to Defendants' MSJ, Docket Entry No. 139-12, p. 3 ¶ 127.

[29]'691 Patent, Exhibit 7 to Defendants' MSJ, Docket Entry No. 139-7, p. 7.  Utex does not dispute that the dimensions of the Figure 1 ring match those described in claim 10.

other reinforcing type materials."[30] Defendants argue that combined with this statement, Figure 1 discloses a header ring wholly constructed of fabric-reinforced elastomeric material.[31]

U.S. Patent No. 4,440,404 issued to Roach, et al. ("Roach") describes a prior art header ring with the same dimensions as the ring described in claim 10.[32] Roach is a patent for a header ring "preferably constructed of a homogeneous elastomeric material . . . [that] does not include any nonhomogeneous materials, such as layers of cloth or other reinforcing type materials therein."[33] Roach states that "[n]on-homogeneous materials could, however, be used for the header ring."[34]

U.S. Patent No. 4,474,382 issued to Hjelsand ("Hjelsand") claims a prior art header ring of the same dimensions as the above header rings.[35] Hjelsand, like Roach and using almost the same language, states that the header ring may be constructed from both homogeneous and non-homogeneous elastomer.[36]

---

[30]Id.

[31]Defendants' Response, Docket Entry No. 142, pp. 19-20.

[32]U.S. Patent No. 4,440,404, Exhibit F to Utex's MSJ Brief, Docket Entry No. 134-8, p. 7. Utex does not dispute that the dimensions of Roach match those described in claim 10.

[33]Id.

[34]Id.

[35]U.S. Patent No. 4,474,382, Exhibit K to Utex's MSJ Brief, Docket Entry No. 134-13, p. 5.

[36]Id.

U.S. Patent No. 2,819,102 issued to Horvath ("Horvath") depicts a prior art packing ring that "may be rubber, plastic in homogeneous form or may comprise rubber or rubber-like material, plastic or the like reinforced by asbestos fibers, cotton fabric or the like."[37]   Horvath is a "v"-shaped pressure ring shaped differently than the above header rings and those described in claim 10, although Defendant argues it nonetheless meets the dimensions disclosed in claim 10.[38]

2.  <u>Analysis</u>

Defendants argue that the prior art describes header rings constructed of fabric-reinforced elastomer and therefore necessarily covered by a <u>layer</u> of fabric-reinforced elastomeric material.[39] Anticipation is a question of fact. <u>Shatterproof Glass Corp. v. Libbey-Ownes Ford Co.</u>, 758 F.2d 613, 619 (Fed. Cir. 1985). It must be proven by clear and convincing evidence. <u>In re Cruciferous Sprout Litigation,</u> 301 F.3d 1343, 1349 (Fed. Cir. 2002). To be entitled to summary judgment Utex must show that no reasonable jury could find by clear and convincing evidence that

---

[37]U.S. Patent No. 2,819,102, Exhibit L to Utex's MSJ Brief, Docket Entry No. 134-14, p. 4.

[38]<u>Compare id.</u> Figs. 3–4 at p. 2, <u>with</u> '691 Patent, Exhibit 7 to Defendants' MSJ, Docket Entry No. 139-7, Figs. 1, 3 at p. 4; Figs. 5–6 at p. 5; Fig. 7 at p. 6; <u>see</u> Defendants' Response, Docket Entry No. 142, pp. 20–21.

[39]Defendants' MSJ, Docket Entry No. 139, pp. 16–17; Defendants' Reply, Docket Entry No. 149, pp. 9–10.

the claim is anticipated, and Defendants must show that a reasonable jury must find that the claim is anticipated.

"A patent is invalid for anticipation if a single prior art reference discloses each and every limitation of the claimed invention." Schering Corp. v. Geneva Pharmaceuticals, 339 F.3d 1373, 1377 (Fed. Cir. 2003). "Moreover, a prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference." Id. The meaning of a prior art reference must be derived from the understanding of a person of ordinary skill in the art. Finisar Corp. v. DirecTV Group, Inc., 523 F.3d 1323, 1336 (Fed. Cir. 2008). Inherent anticipation, however, may occur even where a person of ordinary skill in the art at the time would not have recognized the inherent disclosure. Schering, 339 F.3d at 1377. While Defendants have not explicitly referred to inherent anticipation, their argument that the prior art anticipates the patent despite not explicitly identifying the covering layer relies upon the theory of inherent anticipation.

The prior art shows that header rings with the same dimensions as in claim 10 comprised of uniform fabric-reinforced elastomeric material in the L-shaped region were known prior to the '691 Patent. Utex does not dispute this. Defendants argue that the uniform construction of fabric-reinforced elastomeric material in the L-shaped region in the prior art necessarily includes a "layer of fabric of reinforced elastomeric material covering" that region

-11-

and therefore anticipates claim 10. Utex responds that the prior art cannot anticipate the claim because it does not disclose that there was a "layer" "covering" the L-shaped region. But prior art may inherently anticipate claim limitations without expressly disclosing them, even if a person of ordinary skill in the art would not have recognized that inherent anticipation at the time of the patent. Schering, 339 F.3d at 1377. If a header ring comprising uniformly fabric-reinforced elastomeric material is inherently covered by a layer of fabric-reinforced elastomeric material, the prior art anticipates every limitation of claim 10. If it is possible for such a uniform header ring to not have a covering layer, then claim 10 has not been anticipated. The issue for the court is whether a reasonable jury, given the court's instruction on how the claim should be construed, could find that the prior header rings comprised uniformly of fabric-reinforced elastomeric material are inherently covered by a layer of fiber-reinforced elastomeric material.

The court therefore turns to its construction of the patent. At the Markman hearing the parties disputed the meaning of "layer" and "cover," and the court held that those terms did not require construction beyond their plain and ordinary meanings.[40] The court may not at this stage engage in further refinements to the meaning of terms that were decided during claim construction. See AFG Industries, Inc. v. Cardinal IG Co., Inc., 375 F.3d 1367, 1372

---

[40]Markman Order, Docket Entry No. 44, p. 15.

-12-

(Fed. Cir. 2004) (holding that the district court erred when it further refined the term "layer" to decide a summary judgment motion on infringement). But the court may decide that there is no genuine issue of material fact as to whether the prior art meets the plain and ordinary meaning of the terms in the claim limitation. <u>See Thorner v. Sony Computer Entertainment America LLC,</u> 669 F.3d 1362, 1369 (Fed. Cir. 2012).

Utex argues that the prior art examples do not meet the limitation in claim 10 because they lack "layers of cloth" and do not teach a specific orientation of that cloth.[41] But claim 10 does not require "layers of cloth" or a specific orientation; it requires only a layer of fabric-reinforced elastomeric material. Because Utex's proposed meaning is outside the bounds of the plain and ordinary meaning of the limitation, it is an inappropriate attempt to argue a new construction for the claim.

Defendants argue that the court's claim construction means that uniformly constructed header rings are covered by a layer of what they are constructed of. However, Defendants read too much into the court's statement in the <u>Markman</u> Order that "[c]laim 10 of the '610 Patent does not require the 'layer of fabric reinforced elastomeric material' to be 'discrete' from anything, including the rest of the resilient body."[42]   That statement was made in the

_____

[41]Utex's MSJ Brief, Docket Entry No. 134, pp. 12, 15-16, 20, 24.

[42]<u>Markman</u> Order, Docket Entry No.44, p. 10.

context of rejecting Defendants' specific proposed construction of "layer" and adopting the plain and ordinary meaning.[43] When the court rejected Defendants' proposed construction of "layer," it did not hold that the claim's limitation necessarily included header rings of uniform fabric-reinforced construction. It merely held that further construction of "layer" would not add clarity to the term or the claim.[44] In other words, the court held it need not further construe the term because whether a header ring made of fabric-reinforced elastomeric material is covered by a layer of such material should be clear to the fact-finder from the plain and ordinary meaning of the words.

A term given its plain and ordinary meaning is construed to mean what a person of ordinary skill in the art would understand it after reading the entire patent. <u>Wisconsin Alumni Research Foundation v. Apple Inc.</u>, 905 F.3d 1341, 1348 (Fed. Cir. 2018). Parties may introduce evidence as to the plain and ordinary meaning of terms not construed by the court as long as it does not amount to arguing claim construction to the jury. <u>MediaTek inc. v. Freescale Semiconductor, Inc.</u>, Case No. 11-cv-5341-YGR, 2014 WL 971765 at *4 (N.D. Cal. March 5, 2014) (citing <u>Apple, Inc. v. Samsung Electronics Co., Ltd.</u>, 12-CV-00630-LHK, 2014 WL 660857, at *3 (N.D. Cal. Feb. 20, 2014)). But neither party has pointed to

---

[43]<u>See id.</u>

[44]<u>Id.</u> at 11.

-14-

any evidence in the record of what a person of ordinary skill in the art would understand the terms "layer" and "cover" to mean after reading the patent.   Instead, they point to expert constructions of the entire limitation.  For example, two of Utex's experts opine that any header ring with fabric-reinforced elastomer present in the L-shaped region would meet claim 10 limitations without explaining how they understand that to mean there is necessarily a covering layer.[45]  Because such sweeping statements enter the realm of claim construction and could not be presented to a jury, the court assigns them no evidentiary weight.

The court concludes that, given a plain and ordinary meaning instruction for "layer" and "covering," no reasonable jury could decide that a header ring comprised of one uniform type or combination of material in the L-shaped region is inherently or necessarily covered by a layer of that same material.[46]  Otherwise, the term "layer" in the claim would have no meaning.  The claim states that it is limited to header rings that are comprised of a layer of fabric-reinforced elastomeric material over at least the L-shaped region, which is necessarily a more limited set than all

---

[45]Deposition of Robert Ash, Exhibit 3 to Defendant's Response, Docket Entry No. 142-3, pp. 10–11; Videotaped Oral Deposition of Steven B. MacLean, Ph.D., P.E., Exhibit 8 to Defendants' MSJ, Docket Entry No. 142-8, p. 5.

[46]A rough analogy illustrates this point:  In common parlance, a candy bar made of 100% chocolate (e.g., a Hershey bar) would not be said to be covered by a layer of chocolate.  It would therefore not anticipate a candy bar with a chocolate layer over nougat (e.g., a 3 Musketeers bar).

header rings with fabric-reinforced elastomeric material in the L-shaped region.[47] See Wisconsin Alumni, 905 F.3d at 1348 ("Giving a term its plain and ordinary meaning does not leave the term devoid of any meaning whatsoever."). No reasonable jury could conclude a person of ordinary skill in the art would understand any prior art header rings made of fabric-reinforced elastomeric material necessarily had a layer of that material covering the L-shaped region.

Defendants rely on this theory for each example of prior art they contend anticipates claim 10, all of which therefore fail as a matter of law. Accordingly, Defendants' MSJ will be denied, and Utex's MSJ on anticipation will be granted.

## C.  Doctrine of Equivalents

Defendants also seek summary judgment that Utex may not rely on the doctrine of equivalents to prove infringement of the '691 Patent because the presence of fabric in the elastomer is equivalent to a layer of fabric-reinforced elastomeric material.[48] The doctrine of equivalents allows a finding of patent infringement where the accused product contains every claim element or its

---

[47]"Comprising" is an open transition phrase that includes devices that employ additional, unrecited elements. AFG Industries, Inc. v. Cardinal IG Co., Inc., 239 F.3d 1239, 1244-45 (Fed. Cir. 2001). Rings comprising fabric-reinforced elastomeric material would be any ring with such material; rings comprising a layer of that material must be a more limited subset.

[48]Defendants' MSJ, Docket Entry No. 139, p. 19 (citing MacLean Patent Report, Exhibit 6 to Defendants' MSJ, Docket Entry No. 139-6, pp. 7-8 ¶¶ 122-27).

equivalent.  Marquip, Inc. v. Fosber America, Inc., 198 F.3d 1363, 1366 (Fed. Cir. 1999).  The accused product's equivalence to a claimed element means the difference is "'insubstantial' to one of ordinary skill in the art."  Id. (quoting Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 117 S. Ct. 1040, 1054 (1997)).  But "[t]he doctrine of equivalents cannot be applied to encompass the prior art."  Gemalto S.A. v. HTC Corp., 754 F.3d 1364, 1374 (Fed. Cir. 2014).  Otherwise, the patentee could extend the patent's coverage beyond what could have been obtained from the Patent and Trademark Office using literal claims.  Marquip, 198 F.3d at 1367.

Defendants' argument echoes their anticipation argument: Because the prior art discloses that header rings may be composed of fabric-reinforced elastomeric material, the Redline header ring cannot be found to have the equivalent of "layers of fabric-reinforced elastomeric material" simply because it contains fabric-reinforced elastomer.  The court agrees with this argument, but Defendants misstate Utex's theory of equivalency.

Utex's expert, Steven MacLean, reported a theory of equivalence limited to the possibility that the fact-finder determines the Redline header ring is only partially covered by a layer in the L-shaped region.  In that case, he opines that the partial coverage would be equivalent to the full coverage stated in the claim.[49]  MacLean gave no opinion as to a theory of equivalence

---

[49]MacLean Patent Report, Exhibit 6 to Defendants' MSJ, Docket Entry No. 139-6, p. 7 ¶ 124.

should the fact-finder determine the Gardner Redline ring lacks any layer of fabric-reinforced elastomer.   Defendants point to no argument by Utex or its experts that the mere presence of fabric-reinforced elastomer is the equivalent of a covering layer of fabric-reinforced elastomer.   Utex disclaims any such argument.[50]

Analysis of whether an equivalency ensnares prior art requires (1) a hypothetical claim that literally covers the accused device and (2) a comparison of the prior art to the hypothetical claim. MacLean's theory of equivalence was limited to the assumption that Gardner's Redline ring has a layer of fabric-reinforced elastomeric material that only partially covers the L-shaped region.[51]   The hypothetical claim, then, would be for a header ring partially covered by a layer of fabric-reinforced elastomeric material in the L-shaped region.   As the court explained above, the prior art demonstrates that header rings comprising fabric-reinforced elastomer were known when the '591 patent was filed but they did not inherently or necessarily disclose that they were covered by a layer of fiber-reinforced elastomeric material.   MacLean's equivalency theory is not foreclosed as a matter of law by the prior art because it still relies on the presence of at least a partially covering layer of fabric-reinforcing elastomeric

_____

[50]See Utex's Response, Docket Entry No. 148, p. 14 ("Utex does not contend the 'flocked' fabric from the prior art is equivalent to [claim 10's] layer of fabric.").

[51]MacLean Patent Report, Exhibit 6 to Defendants' MSJ, Docket Entry No. 139-6, p. 7 ¶ 124.

material.    Accordingly, Defendants' MSJ will be denied on this
point.

## D.   Evidence of Lost Profits

Defendants seek summary judgment that there are no lost
profits damages for patent infringement.[52]    "To recover lost
profits, the patent owner must show 'causation in fact,'
establishing that 'but for' the infringement, he would have made
additional profits."   Grain Processing Corp. v. American Maize-
Products Co., 185 F.3d 1341, 1349 (Fed. Cir. 1999) (quoting King
Instruments Corp. v. Perego, 65 F.3d 941, 952 (Fed. Cir. 1995)).
The patent owner has the burden of proof to show a reasonable
probability that asserted lost sales would have occurred but for
the infringement.   Id.   To do so, the patent owner must establish
that possible alternatives to the infringing product were not
acceptable or available.   See Zygo Corp. v. Wyko Corp., 79 F.3d
1563, 1571 (Fed. Cir. 1996) (holding that the plaintiff patent-
holder bore the burden of demonstrating that a possible alternative
was not available or acceptable).   Gardner has also considered
using a "TPU header ring," an alternative header ring composed of
thermoplastic polyurethane that lacks fabric reinforcement.[53]
Defendants argue that Utex has not provided evidence that the TPU

---

[52]Defendants' MSJ, Docket Entry No. 139, pp. 29-30.

[53]Expert Report of Dr. Benton Baugh ("Baugh Report"), Exhibit 8
to Defendants' MSJ, Docket Entry No. 139-8, p. 9.

header ring was an unavailable or unacceptable alternative to the XLH header ring.[54]

"[P]roducts lacking the advantages of the patented invention 'can hardly be termed a substitute acceptable to the customer who wants those advantages.'" Presidio Components, Inc. v. American Technical Ceramics Corp., 702 F.3d 1351, 1361 (Fed. Cir. 2012) (quoting TWM Manufacturing Co. v. Dura Corp., 789 F.2d 895, 901 (Fed. Cir. 1986)). Utex's expert, Steven MacLean, stated that the service life of the TPU header ring is "significantly less than that of a fabric-reinforced header ring" and that fabric-reinforcement multiplies the life of an elastomer header ring roughly tenfold.[55]  MacLean further stated that service life is critically important to customers.[56]   Defendants argue that MacLean's testimony is conclusory, but it is corroborated by other evidence in the record.  An email sent by Troy Wiegand reflects that Gardner chose a header ring with fabric reinforcement over one without because Gardner recognized the superior performance.[57] Because Gardner never produced a packing assembly with the TPU header ring beyond the prototype stage, no customer has purchased

---

[54]Defendants' MSJ, Docket Entry No. 139, pp. 29-32.

[55]MacLean Patent Report, Exhibit B1 to Utex's Response, Docket Entry No. 148-5, p. 83 ¶ 187; MacLean Deposition, Exhibit 14 to Utex's Response, Docket Entry No. 148-25, pp. 3-4.

[56]Id. at 3.

[57]Email from Troy Wiegan, Exhibit 43 to Utex's Response, Docket Entry No. 148-51, p. 2.

one.[58]  This evidence is sufficient to establish a genuine issue of
material fact as to the acceptability of the TPU header ring as an
alternative to any fabric-reinforced header ring, including Utex's
XLH header ring.[59]  Accordingly, Defendants are not entitled to
summary judgment on patent-infringement lost profits.

## IV.  **Theft of Trade Secrets**

Utex asserts claims against Defendants under the Federal
Defend Trade Secrets Act ("DTSA") and the Texas Uniform Trade
Secrets Act ("TUTSA").[60]  In general, Utex's theory is that
Defendant Troy Wiegand stole trade secrets when he moved from Utex
to Gardner, including but not limited to secrets related to the
production of Utex's fabric-reinforced elastomer header rings.
Defendants seek summary judgment that the manufacturing process for
Utex's SuperGold header rings are not trade secrets because they

---

[58]Deposition of Vincent A. Thomas, Exhibit 19 to Utex's
Response, Docket Entry No. 148-30, p. 3; Deposition of Gardner
through Randy Clark ("Clark Deposition"), Exhibit 16 to Utex's
Response, Docket Entry No. 148-27, p. 5.

[59]Defendants point to Gardner's testing of the TPU header ring,
which they argue shows that it in fact had better performance than
the XLH header ring, but when considered with the other evidence,
those tests only show that there is a fact issue to be decided at
trial.  See Baugh Report, Exhibit 8 to Defendants' MSJ, Docket
Entry No. 139-8, pp. 9-10 ¶ 224 (concluding Gardner's test can be
relied on to show the TPU header ring had similar performance to
the XLH header ring); MacLean Patent Report, Exhibit 6 to
Defendants' MSJ, Docket Entry No. 139-6, p. 10 ¶ 189 (concluding
Gardner's test is not reliable because it "does not attempt to
simulate or replicate field conditions").

[60]Third Amended Complaint, Docket Entry No. 74, pp. 10, 14.

are not secret and that Utex has not identified any other alleged trade secret with sufficient particularity.

## A.    The SuperGold Header Ring Manufacturing Process

Utex's expert, Steven MacLean, identified the manufacturing process of one of Utex's products, the SuperGold pressure ring, as a trade secret.    MacLean testified that the series of particular steps used to produce the SuperGold rings were not known to the public.[61]    MacLean conceded, however, that each of those steps, separately, involved techniques or data points that were publically known.[62]  Utex argues that its entire set of combined techniques and steps to produce the SuperGold ring is secret.   Defendants argue that there is no evidence that either the overall combined process or any individual steps are trade secrets.

To prove misappropriation of trade secrets a plaintiff must establish that the information taken is a trade secret.    Tewari De-Ox Systems, Inc. v. Mountain States/Rosen, L.L.C., 637 F.3d 604, 610 (5th Cir. 2011).   To determine whether information is a trade secret under TUTSA courts typically apply the standards the Texas Supreme Court developed for older common law trade secret claims. E.g., GlobeRanger Corporation v. Software AG United States of

---

[61] E.g., MacLean Deposition, Exhibit 14 to Utex's Response, Docket Entry No. 148-25, p. 5 (helical winding), p. 10 (calendering).

[62] Id. at 9 (helical winding), 10 (calendering), 14 (bias cutting) and (hydraulic seaming).

America, Inc., 836 F.3d 477, 492 (5th Cir. 2016) (citing In re
Bass, 113 S.W.3d 735, 739 (Tex. 2003)); Miner, Ltd. v. Anguiano,
383 F. Supp. 3d 682, 703 (W.D. Tex. 2019) (same). The six factors
to determine whether a plaintiff's information is a trade secret
under Texas law are:

> (1) the extent to which the information is known outside
> of his business;
>
> (2) the extent to which it is known by employees and
> others involved in his business;
>
> (3) the extent of the measures taken by him to guard the
> secrecy of the information;
>
> (4) the value of the information to him and to his
> competitors;
>
> (5) the amount of effort or money expended by him in
> developing the information; [and]
>
> (6) the ease or difficulty with which the information
> could be properly acquired or duplicated by others.

In re Bass, 113 S.W.3d at 739. The definition of a trade secret
under the DTSA and TUTSA are identical. 18 U.S.C. § 1839(3); Tex.
Civ. Prac. & Rem. Code § 134A.002(6).

As an initial matter, the court rejects Defendants' argument
that the SuperGold production process cannot be a trade secret
because each individual step is itself not a trade secret. Both
statutes expressly state that a "formula . . . process, [or]
procedure" may be a trade secret." 18 U.S.C. § 1839(3); Tex. Civ.
Prac. & Rem. Code § 134A.002(6). A combination of known methods
into a new process or procedure may be a protectable trade secret.

-23-

See Metallurgical Industries Inc. v. Fourtek, Inc., 790 F.2d 1195, 1202 (5th Cir. 1986) (quoting with approval Water Services, Inc. v. Tesco Chemicals, 410 F.2d 163, 173 (5th Cir. 1969) and Ventura Manufacturing Co. v. Locke, 454 S.W.2d 431, 434 (Tex. Civ. App. — San Antonio, 1970, no writ)). Utex states that it does not claim the individual steps to produce its SuperGold rings as trade secrets; it only claims the overall process.[63] The only specific aspects of the process that Utex claims as trade secrets are the details and use of a machine in the process and the time and temperature to cure the ring.[64]

Utex bears the burden of showing that the combined manufacturing process and the machine used are trade secrets. See Tewari De-Ox Systems, 637 F.3d at 610. Utex points to evidence that Wiegand copied Utex's information before moving to Gardner and an expert opinion that Gardner could not have created the competing product so quickly without that information.[65] This evidence could support an inference that the information taken was a trade secret because it shows that the information is not available elsewhere.

---

[63]Utex's Response, Docket Entry No. 148, p. 18.

[64]Id. at 18, 21.

[65]Videotaped Oral Deposition of Troy Wiegand, Ph.D. ("Wiegand Deposition"), Exhibit 4 to Utex's Response, Docket Entry No. 148-15, pp. 3-6; Initial Expert Report of Steven MacLean, Ph.D., P.E. Regarding Trade Secret Misappropriation and Unfair Competition ("MacLean Trade Secret Report"), Exhibit B-2 to Utex's Response, Docket Entry No. 148-6, p. 92 ¶ 181.

-24-

See 360 Mortgage Group, LLC v. Homebridge Financial Services, Inc., 2016 WL 900577, at *4 (W.D. Tex. March 2, 2016) (finding that an employee copying information before her employment ended suggested that the information was not readily available elsewhere).   But Utex has pointed to no evidence that the information taken by Wiegand contained the overall SuperGold ring manufacturing process or details about the machine used during the process.   Nor does Utex point to any other evidence to affirmatively show that the overall process or details of the machine are trade secrets.   It cites MacLean's deposition testimony, but MacLean's opinion that the overall manufacturing process is a trade secret is not supported by any evidence and therefore does not create a fact issue.[66]   Because Utex points to no evidence that would establish there is at least a genuine issue of material fact that the overall manufacturing process is a trade secret, and because Utex agrees that each individual step is not a trade secret, Defendants are entitled to summary judgment that the manufacturing steps and combined manufacturing process are not trade secrets.   See Little, 37 F.3d at 1075.

There is, however, a genuine issue of material fact as to whether the specific details of Utex's cure time and temperatures

---

[66]See MacLean Deposition, Exhibit 14 to Utex's Response, Docket Entry No. 148-25, pp. 5, 6, 9-10; MacLean Trade Secret Report, Exhibit B-2 to Utex's Response, Docket Entry No. 148-6, pp. 39-40 ¶¶ 77-78.

are trade secrets.  Utex's expert, Steven MacLean, opines that the information is a secret because finding the optimal time and temperature for a given rubber compound requires time-consuming testing.[67]   Utex points to an email in which Wiegand suggested the Utex curing temperatures as a starting point in a conversation with a rubber lab.[68]   Wiegand's suggested range of twenty degrees Fahrenheit is much narrower than the eighty-degree range that the rubber lab recommended, which supports MacLean's view that knowing the SuperGold cure times could have allowed Gardner to more quickly identify the correct cure time and temperature and develop a competing product than otherwise would have been possible.[69] Gardner's expert, Rigoberto Advincula, opines that it is known in the literature that rubber cure times and temperatures may be calculated by a formula.[70] He does not, however, conclusively show that Utex's cure formula was calculable; instead he points to similar rubber formulas that have similar known curing times.[71] Because there is a genuine issue of material fact as to whether the

---

[67]MacLean Trade Secret Report, Exhibit B-2 to Utex's Response, Docket Entry No. 148-6, p. 77 ¶ 142, pp. 91–92 ¶ 180.

[68]Email Conversation of Troy Wiegand and Wayne Vanderhoof, Exhibit 44 to Utex's Response, Docket Entry No. 148-52, pp. 2–3.

[69]Id.; MacLean Trade Secret Report, Exhibit B-2 to Utex's Response, Docket Entry No. 148-6, p. 92 ¶ 181.

[70]Expert Report of Rigoberto Advincula, Ph.D., Exhibit 23 to Defendants' MSJ, Docket Entry No. 139-23, p. 5.

[71]Id.

precise curing time and temperature of the SuperGold rings were a trade secret, Defendants are not entitled to summary judgment on this claim.

## B.   Other Trade Secrets

Utex has identified eight other types of information as trade secrets that Defendants seek summary judgment against.[72]   Those categories are:

(1)   mixing instructions used in operating mixers that create the rubber compounds,

(2)   vendors from which the [] fabric is obtained . . .,

(3)   methods and systems for packaging the packing assemblies for storage and shipment,

(4)   customer lists, customer information,

(5)   manufacturing data, cost of production,

(6)   sales data,

(7)   budget information related to Utex products, [and]

(8)   results from tests of Utex's rubber compounds.[73]

Defendants argue that these categories of information are too broad to permit analysis as to whether they are trade secrets.[74]

In order to prove that something is a trade secret, the plaintiff's definition of the trade secret cannot be too vague or

---

[72]Defendants' MSJ, Docket Entry No. 139, p. 21-22.

[73]Id., see also Utex's Supplemental and Amended Objections and Responses to Defendant's First Set of Interrogatories (Nos. 1-4, 6-8, 11, 14 and 15), Exhibit 14 to Defendants' MSJ, Docket Entry No. 139-14, pp. 4-7.

[74]Defendants' MSJ, Docket Entry No. 139, pp. 21-22.

inclusive.  <u>See IDX Systems Corp. v. Epic Systems Corp.</u>, 285 F.3d 581, 583 (7th Cir. 2002).  But "Texas law does not require great detail in the definition of a trade secret."  <u>GlobeRanger Corp.</u>, 836 F.3d at 501.  It is enough for a plaintiff to "identify specific groupings of information that contain trade secrets, identify the types of trade secrets contained in the groupings, and explain how the alleged trade secrets were maintained and treated as trade secrets."  <u>Vianet Group PLC v. Tap Acquisition, Inc.</u>, Civil Action No. 3:14-CV-3601-B, 2016 WL 4368302, at *20 (N.D. Tex. Aug. 16, 2016).  The court concludes that these eight categories are sufficiently specific to identify the types of information and possible trade secrets within.  That the details of Utex's manufacturing materials, processes, and ingredients may contain trade secrets is self-evident, and it is well established that customer information and sales data may be trade secrets.  <u>A.M. Castle & Co. v. Byrne</u>, 123 F. Supp. 3d 895, 902 (S.D. Tex. 2015). The court must therefore address whether there is at least a genuine issue of material fact as to whether the information contains trade secrets.

Utex again points to evidence that Wiegand took the information with him when he went to Gardner and used it there. Utex attempted to protect itself by having its employees, including Wiegand, sign a non-disclosure agreement.[75]   Wiegand took

---

[75]MacLean Trade Secret Report, Exhibit B-2 to Utex's Response, Docket Entry No. 148-6, p. 48 ¶ 97; Declaration of Mark Naedler (continued...)

information from Utex when he departed, including the mixing instructions, results from tests on Utex's rubber compounds, and Utex's customer information.[76]   Unlike with the manufacturing processes discussed above, there is specific evidence that Wiegand took this information.[77]   Wiegand also acquired backlogged manufacturing data, costs of production, and budget information related to Utex's products just before leaving Utex.[78]   There is some evidence Wiegand took photographs of Utex's facilities on his personal devices, which may have included Utex's packaging methods and processes.[79] Emails suggest that Wiegand's knowledge of Utex's production methods led to Gardner's use of the same cloth vendor.[80]

---

[75] (...continued)
("Naedler Declaration"), Exhibit D to Utex's Response, Docket Entry No. 148-10, p. 2 ¶ 4.

[76] See Jones Report, Exhibit C-1 to Utex's Response, Docket Entry No. 148-8, pp. 5, 13-14, 19-29 (concluding Wiegand kept files on Utex's rubber formulations, mixing instructions, and in file folders titled "Schlumberger" and "Halliburton Eng-Serv" after he departed).

[77] Id.

[78] Email Conversation of Troy Wiegand and Mike Vacek and Attachments, Exhibit 35 to Utex's Response, Docket Entry No. 148-45, pp. 2-5.

[79] See Wiegand Deposition, Exhibit 4 to Utex's Response, Docket Entry No. 148-15, pp. 96, 98-99 (testifying that it was not unusual for him to take pictures of the Utex facilities and that Utex's packing assemblies had been interesting to him); see also MacLean Trade Secret Report, Exhibit B-2 to Utex's Response, Docket Entry No. 148-6, p. 48 ¶ 97.

[80] See Email Conversation of Troy Wiegand, Arun Chandrasekaran, and Neal Spence, Exhibit 26 to Utex's Response, Docket Entry No. 148-37, p. 2.

Utex's director of engineering, Mark Naedler, stated that Utex has security protocols such as restricted access and electronic locks to protect this information from the public.[81] This evidence shows a genuine issue of material fact as to whether the eight claimed categories of information contained trade secrets. Accordingly, Defendants are not entitled to summary judgment as to these claimed trade secrets.

### V.  Other State Law Claims

Defendants also seek summary judgment on Utex's Texas state law claims for tortious interference with a contract and unfair competition. Utex's tortious interference claim is based on its theory that Gardner induced Wiegand to breach his non-disclosure agreement by providing Gardner with Utex's confidential information.[82] Its unfair competition claim is based generally on Gardner's alleged use of confidential information and trade secrets to gain a special advantage in competing with Utex.[83] But an unfair competition claim must be premised on the commission of another independent tort or illegal conduct. Taylor Publishing Co. v. Jostens, Inc., 216 F.3d 465, 486 (5th Cir. 2000). Utex's unfair competition claim is better understood as encompassing three

---

[81]Naedler Declaration, Exhibit D to Utex's Response, Docket Entry No. 148-10, pp. 2-3 ¶¶ 2-4.

[82]Third Amended Complaint, Docket Entry No. 74, pp. 17-18.

[83]Id. at 18-19.

separate theories of liability: Unfair competition by (1) misappro-
priation, (2) misappropriation of trade secrets, and (3) tortious
interference with a contract.  Defendants contend that these claims
are preempted by federal copyright and patent law and that Utex has
no evidence to support its alleged lost profits damages for these
claims.[84]

## A.  Federal Preemption

Federal copyright law preempts state law claims if (1) "the
intellectual property at issue is within the subject matter of
copyright" and (2) the state law claim "protects rights in that
property that are equivalent to any of the exclusive rights within
the general scope of copyright."  Ultraflo Corp. v. Pelican Tank
Parts, Inc., 845 F.3d 652, 656 (5th Cir. 2017).  An unfair
competition by misappropriation claim is preempted by the Copyright
Act when the alleged misappropriation is of "original works of
authorship fixed in a tangible medium of expression."  Motion
Medical Technologies, L.L.C. v. Thermotek, Inc., 875 F.3d 765,
774-75 (5th Cir. 2017).  Unfair competition by misappropriation of
trade secrets, by contrast, is not so preempted because such a
claim requires wrongful conduct beyond "mere reproduction."  Id. at
775 (quoting GlobeRanger, 836 F.3d at 488).

Because Utex relies on alleged misappropriation of the
information within documents, photographs, and electronic files —

---

[84]Defendants' MSJ, Docket Entry No. 139, pp. 27-28, 32.

-31-

fixed, original works of authorship — its unfair competition by misappropriation claim is preempted by the Copyright Act, but its claim specifically depending on misappropriation of trade secrets is not. Utex's tortious interference claims likewise are not pre-empted because they require the additional element that Gardner induced a third party (here, Troy Wiegand) to breach a confidential or contractual relationship. See GlobeRanger, 836 F.3d at 488; M-I LLC v. Stelly, 733 F. Supp. 2d 759, 788 (S.D. Tex. 2010).

Nor does federal patent law preempt state law claims based on contractual obligations or unpatented trade secrets. See Kewanee Oil Co. v. Bicron Corp., 94 S. Ct. 1879, 1891 (1974) (holding the Patent Act does not preempt state trade secret laws); Aronson v. Quick Point Pencil Co., 99 S. Ct. 1096, 1101 (1979) (holding the Patent Act did not prevent enforcement of a non-disclosure contract involving an invention). Utex's state law claims for tortious misappropriation of trade secrets, tortious interference with a contract, and its related unfair competition claim are not preempted by federal patent law.

The case relied on by Defendants demonstrates the limited nature of federal patent preemption. In Thermotek the Fifth Circuit's holding of preemption was limited to a state law claim based on "an unpatented utilitarian or design conception which has been freely disclosed by its author to the public at large." 875 F.3d at 778 (quoting Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 109 S. Ct. 971, 980 (1989)). The Patent Act requires that

the public be permitted to freely enjoy such designs unless they are patented, which requires fulfillment of strict conditions and offers only temporary protection.  See id.  Federal patent law barred plaintiff's unfair competition claim based on the defendant's use of its products because the plaintiff had freely given them to the defendant and alleged no element of fraud or dishonesty.  Id.  That case is distinguishable from this action where the allegedly confidential designs and processes were not disclosed to Gardner or the public, and Gardner is alleged to have obtained that information by subverting Wiegand's contractual and confidential relationships with Utex.  Defendants' argument that patent law preempts Utex's misappropriation of trade secrets claim, tortious interference with a contract claim, and related unfair competition claim therefore lacks merit.  Defendants are entitled only to summary judgment on Utex's unfair competition claim to the extent it is based on simple misappropriation.

## B.   Evidence of Lost Profits

Defendants argue that there is no evidence to support lost profit damages based on Utex's state law claims.  "Recovery of lost profits does not require that the loss be susceptible to exact calculation."  Szczepanik v. First Southern Trust Co., 883 S.W.2d 648, 649 (Tex. 1994).  But "[t]he amount of the loss must be shown by competent evidence with reasonable certainty."  Id.  This inquiry is fact intensive.  Id.  "At a minimum, opinions or estimates of lost profits must be based on objective facts,

-33-

figures, or data from which the amount of lost profits may be ascertained." Id. (quoting Holt Atherton Industries, Inc. V. Heine, 835 S.W.2d 80, 84 (Tex. 1992)). "Texas law recognizes that for enterprises with a record of profitability, records of past profits, with other relevant facts and circumstances, may support a finding of lost profits." Meaux Surface Protection, Inc. v. Fogleman, 607 F.3d 161, 171 (5th Cir. 2010) (citing Southwest Battery Corp. v. Owen, 115 S.W.2d 1097, 1098-99 (Tex. 1938)).

Utex points to Alan Ratliff's expert report on damages and contends it establishes a sufficient basis for calculating lost profits for both its tortious interference and unfair competition claims. Ratliff opines that Utex offered the only high-performance packing assembly on the market before Gardner developed its competing product, and that Gardner's sales were therefore at Utex's expense.[85] Ratliff calculated that if Utex had sold additional XLH Packing Assemblies equal to the number of Redline Packing Assemblies sold by Gardner - 169,034 - it would have netted an additional profit of $24,693,310.[86] His calculation includes Utex's fixed and incremental costs and estimates a gross profit rate of 65%.[87] He justified his conclusion that Utex would have sold additional XLH Packing Assemblies for each Redline Packing

---

[85]Ratliff Report, Exhibit A-1 to Utex's Response, Docket Entry No. 148-3, pp. 17-19.

[86]Id. at 61.

[87]Id.

Assembly not sold based on the high demand for the products, the unavailability of any alternatives, and Utex's capacity to have sold and marketed additional units.[88]

Defendants argue that this evidence is insufficient because it is neither the "before-and-after" method nor the "yardstick" method generally used to calculate lost profits.[89]   This misstates the rule followed by Texas courts, which only requires that lost profits must be proven "with reasonable certainty" by "objective facts, figures, or data."   Szczepanik, 883 S.W.2d at 649.   Defendants cite no Texas case holding that only the before-and-after or yardstick tests are acceptable.   The yardstick and before-and-after methods are typically used in federal antitrust cases, and even there they are not the only method permitted.   Eleven Line, Inc. v. North Texas State Soccer Association, Inc., 213 F.3d 198, 207 (5th Cir. 2000).

The court concludes that the data and calculations provided by Ratliff sufficiently rely on objective facts, figures, and data such that they may prove Utex's lost profits with reasonable certainty.   It is not disputed that Utex's XLH header rings had an established record of profitability and for a time were the only product of their kind on the market, and in these circumstances lost profits can be reasonably determined.   See Fogleman, 607 F.3d

---

[88]Id. at 23–28.

[89]Defendants' MSJ, Docket Entry No. 139, p. 32.

at 171.   Defendants, accordingly, are not entitled to summary judgment on Utex's state law claims on the basis that there is no evidence of lost profits damages.

## VI.   Motions to Exclude Expert Opinions

Also pending before the court are motions to exclude expert opinions of Benton Baugh, Vincent A. Thomas, Alan Ratliff, Steven MacLean, and Rigoberto Advincula.[90] The court's practice is to rule on motions to exclude expert testimony during trial because experts frequently modify their opinions, and at trial counsel often establish more extensive predicates for experts' testimony. Moreover, the context in which the testimony is offered is often necessary to rule on such issues.   The motions to exclude and strike the expert opinions will therefore be denied.

## VII.   Conclusions and Order

For the reasons explained above, Defendants Gardner Inc.'s and Dr. Troy Wiegand's Motion for Summary Judgment on Multiple Grounds (Docket Entry No. 139) is **GRANTED** as to Utex's SuperGold manufacturing process trade secret status and Utex's state law

---

[90]Utex's Motion to Exclude Benton Baugh's Expert Testimony Regarding Patent Value, Docket Entry No. 116; Utex's Motion to Exclude Certain Opinions of Defendants' Damages Expert Vincent A. Thomas, Docket Entry No. 119; Defendants' Motion to Exclude Damages Opinions of Alan Ratliff and Head Start Opinions of Steven MacLean as to Rubber Formulations, Docket Entry No. 123; Utex's Motion to Exclude Certain Technical Opinions of Rigoberto Advincula, Docket Entry No. 131.

claim for unfair competition based on misappropriation, and is **DENIED** as to all other issues and claims.   Utex's Motion for Summary Judgment that the '691 Patent Is Not Anticipated (Docket Entry No. 133) is **GRANTED**.   Utex's Motion to Exclude Benton Baugh's Expert Testimony Regarding Patent Value (Docket Entry No. 116), Utex's Motion to Exclude Certain Opinions of Defendants' Damages Expert Vincent A. Thomas (Docket Entry No. 119), Defendants' Motion to Exclude Damages Opinions of Alan Ratliff and Head Start Opinions of Steven MacLean as to Rubber Formulation (Docket Entry No. 123), and Utex's Motion to Exclude Certain Technical Opinions of Rigoberto Advincula (Docket Entry No. 131) are **DENIED**.

Motions in Limine will be filed by March 6, 2020, and responses will be due by March 19, 2020.   The Joint Pretrial Order will be filed by April 3, 2020.   Docket Call will be held on April 10, 2020, at 3:00 p.m.

**SIGNED** at Houston, Texas, this 21st day of February, 2020.


_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE